UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| STEPHEN R. JONES, *Individually and on behalf of similarly situated individuals*,     *Plaintiff*, <br><br> v. <br><br> FIRST ADVANTAGE BACKGROUND SERVICES CORP.,     *Defendant*. | CASE NO. 3:23-CV-553 (KAD) <br><br><br><br><br> AUGUST 5, 2025 |

<u>**MEMORANDUM OF DECISION**</u>
**RE: MOTION FOR SUMMARY JUDGMENT (ECF NO. 42); MOTION FOR CLASS CERTIFICATION (ECF NO. 40)**

Kari A. Dooley, United States District Judge:

In this putative class action, named Plaintiff Stephen R. Jones ("Plaintiff") asserts that Defendant First Advantage Background Services Corporation ("First Advantage") violated the Fair Credit Reporting Act ("FCRA"), specifically 15 U.S.C. § 1681e(b), when it conducted and sold a criminal background report that falsely attributed a conviction for federal drug trafficking charges to Plaintiff, when, in fact, the individual who was convicted was a different "Stephen Jones." Pending before the Court are: (1) First Advantage's Motion for Summary Judgment as to Plaintiff's claim that First Advantage willfully violated Section 1681e(b), in violation of Section 1681n (Count One); as well as (2) Plaintiff's Motion for Class Certification, which is also premised on the willful violation of the FCRA alleged in Count One. For the reasons that follow, First Advantage's Motion for Summary Judgment (ECF No. 42) is **GRANTED**, and Plaintiff's Motion for Class Certification is **DENIED**.

**Factual and Procedural Background**

The relevant facts are taken from First Advantage's Local Rule 56(a)1 Statement ("Def. 56(a)1"), ECF No. 42-2, and attached exhibits, ECF Nos. 42-3 through 42-30, as well as Plaintiff's

Local Rule 56(a)2 Statement ("Pl. 56(a)2"), ECF No. 47-1, and attached exhibits, ECF Nos. 47-2 through 47-14. All the facts set forth herein are undisputed unless otherwise indicated.

First Advantage's Criminal Records Reporting Procedure

First Advantage is a foreign corporation organized under the laws of the State of Florida, with its principal place of business in Atlanta, Georgia. Pl. 56(a)2 at p. 21. First Advantage conducts and sells consumer background reports for employment purposes, and is considered a "Consumer Reporting Agency" under 15 U.S.C. § 1681a(f). *Id.*

As relevant here, when First Advantage receives an order for a criminal background check on a consumer, its Court Research & Retrieval Group ("CRRG") team searches for criminal records based on a correlation between the personal identifiers associated with the consumer and those associated with the subject of the criminal records (*i.e.*, the criminal defendant or offender). *See* Def. 56(a)1 at ¶ 1. Whenever a record is found that meets certain matching criteria, the assigned CRRG researcher enters information about the record into First Advantage's Public Records Online Management ("PROM") system. *Id.* at ¶ 2. Following the search, the court records are reviewed to determine whether they should be included in the consumer's report, in accordance with the FCRA, state and local laws, First Advantage's procedures, and indeed, the third-party customer's instructions. *See id.* at ¶¶ 3–4. If a consumer disputes criminal record information in his or her report, the disputed information is reinvestigated as required by Section 1681i of the FCRA and state law. *Id.* at ¶ 5. First Advantage does not include information about a criminal record in a consumer's report unless there are at least two matching identifiers between the consumer and the criminal defendant, and no contradictory identifiers. *Id.* at ¶ 6. Moreover, for common names (*e.g.*, "Stephen Jones"), First Advantage generally requires that there be a third matching identifier and no exclusionary identifiers. *Id.* at ¶ 7.

"Identifiers" include, *inter alia*, a consumer's name, date of birth, address, Social Security number, and driver's license number. *Id.* at ¶ 11. Under First Advantage's matching procedures, a criminal record must be excluded if the personal identifiers of a criminal defendant conflict with those of the subject consumer. *Id.* at ¶ 12. To promote and ensure accurate information/reporting, CRRG researchers are assigned to particular courts and then specially trained to understand where and how to find information within those particular court systems. *Id.* at ¶ 14. For any case identified as potentially reportable, First Advantage's procedures require CRRG researchers to review available case information and court records for the criminal defendant's personal identifiers and, if the minimum matching criteria are met, to accurately enter into PROM all personal identifiers found in the case. *Id.* at ¶ 19. Indeed, CRRG researchers conduct federal criminal records searches using PACER, and when doing so, they must review case information and documents until the record is excluded due to contradictory identifiers or there is nothing left to review. *Id.* at ¶¶ 20, 24.

First Advantage provides its new associates with an initial, weeks-long training program, and thereafter regularly trains its associates in both classroom settings and in supervised sessions involving individualized one-on-one instruction. *Id.* at ¶¶ 25–27. Additionally, First Advantage audits employees for accuracy on a monthly basis, and incentivizes compliance by tying associate bonuses to accuracy (not speed) in reporting. *Id.* at ¶¶ 29–30. First Advantage also consistently reviews its systems and procedures to identify ways to improve compliance with federal and state laws, consistency in application of procedures, and accuracy in reporting, and then works to implement those improvements. *Id.* at ¶¶ 31–32. Any resulting technological system changes are

designed to help minimize human error and promote compliance with First Advantage's procedures and the accurate matching of personal identifiers.[1]  *See id.* at ¶ 39.

First Advantage maintains a reporting accuracy rate of over 99.9%, and fewer than 0.5% of background reports prepared by First Advantage are disputed.  *Id.* at ¶¶ 67–68.  From May 2021 to April 2024, 0.007% of background reports were revised due to consumer disputes that a criminal record did not belong to them.  *Id.* at ¶ 70.

<u>Plaintiff's Application and Related Criminal Background Report</u>

On October 10, 2021, Costco ordered a pre-employment background report on Plaintiff Stephen Jones from First Advantage, and provided Plaintiff's first and last name, middle initial, date of birth, address, and Social Security number.  *Id.* at ¶ 41.  Per Costco's instructions, First Advantage conducted several criminal record searches, including a federal criminal records search.  *Id.* at ¶ 42.

In connection with the federal criminal records search, First Advantage's system initially conducted an automated search of PACER's name index for cases filed in the District of Connecticut, which returned six hits for parties with the same last name and a similar first name as Plaintiff.  *Id.* at ¶ 43.  On October 11, 2021, research of those court records was assigned to Mr. Kumar, who completed his assignment about 10 hours later.  *Id.* at ¶ 44.  In conducting his research, Mr. Kumar reviewed the results of the PACER search and excluded all cases returned therefrom except for Case No. 3:18-CR-81 (SRU), in which one of the named criminal defendants is named Stephen Jones (hereinafter, the "Stephen Jones Case").  *Id.* at ¶ 45.  Mr. Kumar reviewed the docket

---

[1] First Advantage claims that its procedures are implemented in an effort to ensure that its reports and information are provided with maximum possible accuracy, including efforts to minimize potential for human error to occur.  *See* Def. 56(a)1 at ¶ 40.  Plaintiff disputes this contention, insofar as First Advantage failed to implement a "double-check" procedure, even though it would have improved the accuracy of the consumer report it disclosed about Plaintiff.  *See* Pl. 56(a)2 at ¶ 40.  As set forth herein, the Court resolves this dispute by concluding as a matter of law that First Advantage's procedures—including its failure to implement a "double-check' protocol—were not "objectively unreasonable."

and various filings for the Stephen Jones case, including the indictment and the judgment. *Id.* at ¶ 46. Based on his research—as well as his own erroneous entry of certain identifying information from the Stephen Jones Case into the PROM system[2]—Mr. Kumar completed the background report representing that Plaintiff was the same Stephen Jones as the criminal defendant in the Stephen Jones Case. *See id.* at ¶¶ 47–58. Mr. Kumar's entry of inaccurate information about the Stephen Jones Case violated First Advantage's procedures, which require that a CRRG associate must ensure that the information entered in PROM for a case accurately reflects the information found in the court records. *Id.* at ¶ 59.

On October 12, 2021, First Advantage completed Plaintiff's background report and mailed him notice thereof. *Id.* at ¶ 60. The next day, on behalf of Costco, First Advantage mailed Plaintiff a pre-adverse action notice, enclosing a copy of his background report. *Id.* at ¶ 61. On October 27, 2021, on behalf of Costco, First Advantage mailed Plaintiff an adverse action letter which indicated that Costco was unable to offer him employment, based in whole or in part on information contained in the background report. *See id.* at ¶ 62 (citing Exhibit 15 (ECF No. 42-17)). Sometime in the next few weeks, Plaintiff opened his mail and learned that First Advantage had included information about the Stephen Jones Case in his background report.[3] *See id.* at ¶ 63. Plaintiff did not contact Costco or First Advantage to dispute any information in his background report until September 26, 2024, well after the commencement of this litigation, when he e-mailed First Advantage to dispute the Stephen Jones Case in his report. *Id.* at ¶¶ 64–65.

Plaintiff filed his initial Complaint on May 1, 2023, and the operative Amended Complaint on October 5, 2023. As relevant here, Plaintiff alleges that First Advantage willfully violated

---

[2] The record is undeveloped and therefore unclear as to how or why Mr. Kumar mistakenly entered matching identifiers into the PROM system as having been located in the Stephen Jones Case. Mr. Kumar was not deposed.

[3] The parties dispute the precise date on which Plaintiff reviewed the adverse action letter and background report. This dispute is immaterial.

Section 1681e(b), as to Plaintiff and a putative class of individuals, by sending out background reports indicating that the subject consumer was a convicted criminal without first "double-checking" the work of its investigators. Indeed, Plaintiff claims that First Advantage's failure to implement a "double-check" protocol amounts to a willful failure to take reasonable steps to assure the maximum possible accuracy of its background reports, as required by statute, before sending them to third-parties, *e.g.*, would-be employers. On January 30, 2025, First Advantage filed a Motion for Summary Judgment as to Plaintiff's claim of a willful violation of Section 1681e(b). *See* MSJ, ECF No. 42.[4] That same day, Plaintiff filed a Motion for Class Certification, which seeks certification of a class of consumers harmed by First Advantage's alleged willful violation of Section 1681e(b). *See* Mot. for Class Cert., ECF No. 40. The parties filed their respective opposition papers on March 21, 2025, and their respective reply briefs on April 18, 2025. *See* ECF Nos. 47–50. At the parties' request, *see* ECF No. 51, on July 23, 2025, the Court held oral argument on both the Motion for Summary Judgment and the Motion for Class Certification.

## MOTION FOR SUMMARY JUDGMENT

**Standard of Review**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113–14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary

---

[4] First Advantage does not seek summary judgment as to Plaintiff's claim that First Advantage negligently violated the FCRA.

judgment is granted on the merits or on an affirmative defense . . . ." *Giordano v. Mkt. Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010). In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth "specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). He cannot "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quotation marks and citation omitted). Nor can he rely on "mere speculation or conjecture as to the true nature of the facts." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quotation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

**Discussion**

The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). "The FCRA broadly covers consumer reports, including background checks used for various purposes, including employment purposes." *Wilson v. First Advantage Background Servs. Corp.*, 490 F. Supp. 3d 506, 510 (D. Conn. 2020).

7

In pertinent part, Section 1681e(b) of the FCRA requires that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." It follows that, to establish a Section 1681e(b) violation, a plaintiff must show: (1) inaccuracy; (2) failure to follow reasonable procedures; (3) damages; and (4) causation.[5] *See Neclerio v. Trans Union, LLC*, 983 F. Supp. 2d 199, 209 (D. Conn. 2013). To demonstrate that such violation was willful, Section 1681n requires a plaintiff to show that the consumer reporting agency "knowingly and intentionally" violated Section 1681e(b) "in conscious disregard for [his] rights," or that the consumer reporting agency recklessly disregarded its statutory duties by adopting an "objectively unreasonable" interpretation of Section 1681e(b) that created an unjustifiably high risk of harm that the consumer reporting agency either knew about or that was so obvious that it should have known about it. *Id.* at 223.

Plaintiff does not allege that First Advantage knowingly and intentionally violated Section 1681e(b). He claims that First Advantage recklessly disregarded its statutory duties when it adopted an "objectively unreasonable" interpretation of Section 1681e(b). In seeking summary judgment, First Advantage argues that there is no evidence in the record supporting Plaintiff's claim that it willfully violated Section 1681e(b). First Advantage further asserts that: (1) its existing and highly effective background report investigation procedures, if followed in Plaintiff's case, would have prevented the inaccuracy in Plaintiff's report; and (2) Plaintiff's proposed "double-checking" procedure is only required under the FCRA *after* a consumer disputes his report, and therefore, First Advantage's failure to implement such a procedure was not "objectively

---

[5] First Advantage does not dispute that the information it reported was inaccurate, nor does it appear to contest that Plaintiff suffered at least some cognizable injury. As a result, the claim turns on the reasonableness of First Advantage's procedures.

8

unreasonable." In response, Plaintiff contends that evidence of willfulness can be derived from: (a) First Advantage's decision to not implement a "double-checking" procedure; (b) Mr. Kumar's failure to otherwise follow First Advantage's existing procedures; and (c) the sheer egregiousness of Mr. Kumar's flawed investigation. Stated differently, Plaintiff posits that First Advantage's failure to implement a "double-check" protocol does render its procedures "objectively unreasonable" and a willful violation of Section 1681e(b); and alternatively, Plaintiff claims that Mr. Kumar's violation of First Advantage's procedures was sufficiently egregious such that willfulness may be inferred and imputed to First Advantage. The Court agrees with First Advantage, and will address in turn each of Plaintiff's arguments.

<u>First Advantage's Procedures</u>

First, the Court finds that no reasonable jury could conclude that First Advantage willfully violated Section 1681e(b) by failing to implement Plaintiff's proposed "double check" protocol. In *Safeco*, the Supreme Court assessed three factors in determining whether a consumer reporting agency's reading of the FCRA was "objectively unreasonable": (1) whether the FCRA was silent on the issue; (2) whether the agency's reading of the statute "has a foundation in the statutory text"; and (3) whether the courts of appeals or the Federal Trade Commission ("FTC") had offered guidance on the issue. *See* 551 U.S. at 69–70. Each of the three *Safeco* factors weighs in First Advantage's favor.

Where a statute is "silent on the point," a reading that "has a foundation in the statutory text" is not unreasonable. *Id.* Here, Section 1681e(b) is silent on whether a reinvestigation or "double checking" protocol is required prior to the issuance of a background report containing criminal history information. Indeed, Section 1681e(b) requires only that a consumer reporting agency follow reasonable procedures to assure maximum possible accuracy. It does not define

9

"reasonable procedures" or "maximum possible accuracy," nor does it specifically require that a consumer reporting agency's investigation be reinvestigated or "double checked" at any juncture in order to satisfy the statute.  In the absence of any clear guidance within Section 1681e(b), extrinsic statutory text—specifically, Section 1681i, also part of the FCRA—becomes informative.

Section 1681i(a)(1)(A) states that:

[I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate.

It follows that First Advantage's interpretation of Section 1681e(b) to not require the implementation of a "double check" protocol prior to a consumer report being disputed has a foundation in the FCRA's broader statutory text, and is therefore presumptively reasonable.  *See Safeco*, 551 U.S. at 69–70.  In his opposition, Plaintiff urges that his proposed "double-check" protocol does not entail a complete reinvestigation *per se*, but rather, would only require CRRG researchers to "record into PROM the specific location where they found 'matching identifiers,'" and "download (or screenshot) available court documents containing those 'identifiers' and save them," so that another First Advantage employee could review the researcher's work.  *See* Pl. Opp. at 13, 16.  Plaintiff further contends that Section 1681i's reinvestigation provisions are inapplicable because they are contained in a different subsection of the FRCA, and apply under different circumstances.  Plaintiff argues that a consumer reporting agency's obligations when a dispute is raised have nothing to do with its obligations before issuing the consumer report in the first instance.[6]  The Court is not persuaded.

---

[6] As the Court acknowledged during oral argument, Section 1681i does not speak to a consumer reporting agency's obligations under Section 1681e(b), but for the reasons discussed below, nor is it irrelevant.

10

If the reinvestigation requirements contained in Section 1681i were contained within Section 1681e(b) as it relates to initial reporting, the reasonableness inquiry would necessarily begin and end at *Safeco*'s first factor. Indeed, it is precisely Section 1681e(b)'s silence on the issue that leads to *Safeco*'s second factor and the Court's assessment of whether, notwithstanding such silence, First Advantage's interpretation of the FCRA has a foundation in the statutory text. And here, Section 1681i—even if not directly pertaining to the circumstances presented here—nevertheless lends support for the notion that a consumer reporting agency is not required to implement procedures to "double-check" or otherwise review an investigator's findings until *after* the consumer disputes the report. In that regard, Section 1681i, although not controlling as to what Section 1681e(b) requires, does speak to the reasonableness of First Advantage's interpretation of the statute and its existing procedures. Moreover, as posited by First Advantage, interpreting Section 1681e(b) to require a "front end" reinvestigation or "double-check" protocol would effectively override the fundamental purpose of Section 1681i – to place additional obligations on a consumer reporting agency in the event of a disputed entry in a report. *See Consumer Fin. Prot. Bureau v. MoneyLion Techs. Inc.*, No. 22-CV-8308 (JPC), 2025 WL 893684, at *26 (S.D.N.Y. Mar. 24, 2025) ("In general, when Congress addresses a discrete problem through specific language in one part of a statute, it is safe to assume that it did not also intend to address that same issue through more general provisions included in the same enactment.") (citing *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 646 (2012) ("general language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment.")).

As to the third *Safeco* factor, it does appear that both the FTC and the courts of appeals have offered some guidance on the issue, at least as it pertains to when a consumer reporting

11

agency's duty to reinvestigate arises. Indeed, the Second Circuit has expressly held that "[p]rior to being notified by a consumer, a credit reporting agency generally has no duty to reinvestigate credit information." *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 474 (2d Cir. 1995) (citing Section 1681i(a)). Similarly, the Sixth Circuit has indicated, when evaluating whether consumer reporting agencies must verify adverse information prior to releasing a report, that such reinvestigation measures are "plainly not required by the FCRA." *See Nelski v. Trans Union, LLC*, 86 F. App'x 840, 847 (6th Cir. 2004) (citing *Casella*, 56 F.3d at 474).[7] The FTC has likewise acknowledged that a consumer reporting agency's "obligation under [Section 1681i] arises only where file information is disputed by the consumer who notifies the agency directly of such dispute." *40 Years of Experience With the Fair Credit Reporting Act*, 2011 WL 3020575, at *70 (internal quotation marks omitted). Accordingly, even assuming *arguendo* that Plaintiff's proposed "double-checking" protocol does not entail a complete "reinvestigation," the foregoing decisions still speak to the objective reasonableness of First Advantage's decision not to implement such a protocol prior to issuing a report or prior to receiving a dispute.

Beyond the *Safeco* analysis, it is also undisputed that First Advantage's existing procedures maintain an accuracy rate of over 99.9%, and that Plaintiff's inaccurate report was a direct consequence of Mr. Kumar's failure to follow First Advantage's existing—and clearly effective—procedures. These facts, while perhaps not dispositive under *Safeco*, are relevant to the reasonableness inquiry. And they certainly weigh against Plaintiff's claim that First Advantage's procedures created an unjustifiably high risk of harm that First Advantage either knew about or that was so obvious that First Advantage should have known about it. *Safeco*, 551 U.S. at 56–57. Indeed, it is quite difficult to conclude that First Advantage's existing procedures were

---

[7] Plaintiff does not address either *Casella* or *Nelski*.

"objectively unreasonable" when those same procedures, if followed, would have prevented the underlying inaccuracy, and have otherwise resulted in an exceptionally high accuracy rate.[8]

For all of these reasons, the Court concludes that First Advantage's background report procedures—including its lack of a "front end" "double-checking" protocol—are not objectively unreasonable and therefore do not constitute a willful violation of Section 1681e(b).

Plaintiff's Background Report

In the alternative, Plaintiff claims that willfulness can be inferred from both Mr. Kumar's mere failure to follow First Advantage's procedures, as well as his egregiously flawed investigation. The Court is not persuaded, and concludes that "[t]here is no support in this record for Plaintiff's assertion that [First Advantage] acted willfully or recklessly, as opposed to negligently, in failing to carry out any obligation under the FCRA." *See Rambarran v. Bank of Am., N.A.*, 609 F. Supp. 2d 1253, 1271–72 (S.D. Fla. 2009).

*Mr. Kumar's Failure to Follow Procedures*

Plaintiff argues that "[w]hen a [consumer reporting agency] fails to follow its own otherwise reasonable procedures, a jury can conclude its conduct is willful." Pl. MSJ Opp., ECF No. 47 at 20 (citing *Williams v. First Advantage LNS Screening Sols., Inc.*, 238 F. Supp. 3d 1333, 1344–45 (N.D. Fla. 2017), *aff'd in part, rev'd in part*, 947 F.3d 735 (11th Cir. 2020)). As evidence of this willfulness, Plaintiff cites to the 2,986 consumers who filed complaints with First Advantage disputing the criminal charges listed in their background reports during a period between May 2021 and April 2024. *See* Def. 56a(1) at ¶¶ 69–70. According to Plaintiff, the sheer number of disputed reports evinces First Advantage's willful failure to comply with its own

---

[8] In their briefing, the parties vigorously debate whether Plaintiff's proposed "double-checking" protocol would impose a substantial burden on First Advantage and/or improve First Advantage's accuracy rate. But the Court need not reach these issues, because the reasonableness inquiry here can be—and indeed, has been—resolved without consideration of the practical feasibility of implementing such a proposal or the likelihood of more accurate outcomes.

13

procedures and, in turn, Section 1681e(b). This argument is flawed. Though the Court agrees with Plaintiff that First Advantage's accuracy rate "is not conclusive evidence of reasonable procedures," it is unquestionably relevant.[9] Here, First Advantage's accuracy rate remains at over 99.9%, even when adjusted for cases specifically involving reports containing criminal history information. *See* Def. MSJ Reply at 9. If nothing else, this indicates that First Advantage's CRRG researchers are not regularly ignoring its procedures. *Cf. Williams*, 238 F. Supp. 3d at 1345 (wherein "the errors were so prevalent and continuous that a reasonable inference can be drawn that First Advantage was not interested in correcting the errors and, thus, recklessly disregarded the FCRA") (citation and internal quotation marks omitted). Indeed, there is simply no record evidence suggesting "that Mr. Kumar or other associates regularly ignored First Advantage's procedures to accurately transcribe information in the court record or that First Advantage knew its procedures were being ignored." *See* Def. MSJ Reply at 9. Likewise, there is no evidence in the record that the precise error made in this case—the mistaken entry of Plaintiff's address and birth year into PROM instead of the criminal defendant's identifiers as contained in the court record—was anything other than a "single inaccuracy." In that regard, the circumstances here are similar to those in *Smith v. LexisNexis Screening Sols., Inc.*, in which the Sixth Circuit underscored both the "single mix-up" in reporting, as well as the consumer reporting agency's low dispute rate. *See* 837 F.3d 604, 610–11 (6th Cir. 2016). As in *Smith*, the record evidence here does not permit this Court to conclude that Plaintiff's inaccurate report resulted from First Advantage's disregarding a high risk of harm about which it knew or should have known.

---

[9] In fact, the Court implicitly finds an accuracy rate to be more probative than Plaintiff's oft-cited raw figure of 2,986 disputed reports, which tends to discount that nearly *7 million* reports including criminal records information were created during the same period.

14

*Mr. Kumar's Flawed Investigation*

Plaintiff also seeks to impute willfulness to First Advantage given the purportedly egregious nature of Mr. Kumar's conduct. In this vein, Plaintiff relies primarily on *Adams v. National Engineering Service Company*, in which Judge Hall concluded that "a reasonable jury could find that, in preparing a background investigation report for [plaintiff] which included convictions pertaining to an individual with a different first name from a different state, [defendant] created 'an unjustifiably high risk of harm . . . so obvious that it should [have been] known.'"  620 F. Supp. 2d 319, 330 n.7 (D. Conn. 2009) (citing *Safeco*, 551 U.S. at 71). Conversely, First Advantage attributes Mr. Kumar's mistakes to "simple human error," and argues that a "single inaccuracy, without more, does not constitute a willful violation of the FCRA."  MSJ at 14 (citing *Smith*, 837 F.3d at 611).  On the continuum between a single simple mistake at one end (*Smith*), and truly egregious and obvious errors at the other (*Adams*), the Court concludes that Mr. Kumar's conduct is more akin to a simple oversight, and certainly not as obvious or egregious as was the case in *Adams*.

Mr. Kumar's investigation, though clearly lacking an appropriate level of attention to detail, was less egregious than the investigation in *Adams*, which linked the plaintiff to "convictions attributed to a person with a *different name in a different state*."  See *Adams*, 620 F. Supp. 2d at 330 (emphasis added).  Indeed, under First Advantage's matching procedures, a consumer's name and address are two "identifiers."  See Def. 56a(1) at ¶ 11.  Thus, the Court is confident that the error in *Adams*—in which the plaintiff's name and address did not match those of the criminal defendant—would not have occurred under First Advantage's procedures, because there would never have been sufficient matching "identifiers" in the first instance.  Moreover, the consumer reporting agency in *Adams* does not appear to have established the kind of robust

15

reporting procedures utilized by First Advantage, *e.g.*, the PROM system. Instead, the field researcher in *Adams* relied on information provided by a staffing agency and simply "searched court records" and "produced a report based on those records." *See id.* By contrast, here, when entering information about the Stephen Jones Case into the PROM system, Mr. Kumar mistakenly input Plaintiff's address and birth year instead of the criminal defendant's identifiers as contained in the court record, thus creating a false association between Plaintiff and the Stephen Jones Case. In the Court's view, Mr. Kumar's mistakes are more akin to the clerical errors at issue in *Smith* and *Christensen*—a case principally cited by First Advantage—than those in *Adams*, which involved less oversight of the outsourced investigation. *See, e.g.*, *Christensen v. Acxiom Info. Sec. Servs., Inc.*, No. 08-CV-4081, 2009 WL 2424453, at *3 (W.D. Ark. Aug. 6, 2009) (plaintiff's "control number" was accidentally entered on a form containing information about another individual, who had a criminal record). Additionally, it is undisputed that Mr. Kumar received regular training on his court research duties, and there is no record evidence suggesting that he had previously made similar mistakes or was otherwise unreliable. For these reasons, the Court cannot conclude that Mr. Kumar's "isolated instance of human error" constituted an "unjustifiably high risk of harm" that First Advantage knew or should have known about.

In light of the foregoing, First Advantage's Motion for Summary Judgment as to Count One is GRANTED.

## MOTION FOR CLASS CERTIFICATION

Through his Motion for Class Certification, and as modified through his reply brief, Plaintiff seeks certification of the following class:

> All individuals about whom 1) First Advantage conducted a criminal background investigation; 2) and then disclosed a "consumer report" about that individual which included a record that the individual had a criminal charge or conviction to a third party during the two years immediately preceding this Class Action

16

Complaint and continuing on through the date of certification of this class; 3) and First Advantage's internal records show that the third party viewed that consumer report; 4) and the individual initiated a dispute with First Advantage after it disclosed that inaccurate report, and 5) First Advantage "removed" or "revised" that criminal conviction and classified the "Dispute Reason" in its internal CCD as "Not Applicant."

ECF No. 50 at 10.

In their briefing, the parties dispute whether all proposed class members have Article III standing, as well as whether the requirements for class certification as set forth in Rule 23 of the Federal Rules of Civil Procedure have been satisfied. However, the Court need not reach these issues because the putative class is premised on the claim that First Advantage *willfully* violated the FCRA, the very claim rejected above in connection with the Motion for Summary Judgment. Indeed, at oral argument, Plaintiff expressly acknowledged that an award of summary judgment in First Advantage's favor would necessitate the denial of Plaintiff's Motion for Class Certification. Accordingly, the Motion for Class Certification is **DENIED**.

**Conclusion**

For all of the foregoing reasons, First Advantage's Motion for Summary Judgment is **GRANTED as to Count One**. In light of this ruling, by agreement of the parties, Plaintiff's Motion for Class Certification is **DENIED**. This case will proceed to trial forthwith on Count Two – negligent violation of Section 1681e(b). *See* Amended Complaint, ECF No. 27 at 11.

**SO ORDERED** at Bridgeport, Connecticut, this 5th day of August 2025.

                                               */s/ Kari A. Dooley*
                                               KARI A. DOOLEY
                                               UNITED STATES DISTRICT JUDGE